IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD CHAPMAN,<br><br>                    *Petitioner,*<br><br>    v.<br><br>DAVID VARANO, et al.,<br><br>                    *Respondents.* | CIVIL ACTION<br>NO. 13-2995 |

**PAPPERT, J.**                                                                                        July 19, 2023

### MEMORANDUM

      Ronald Chapman, proceeding *pro se*, filed a petition for a writ of habeas corpus. (ECF 1-1). On May 28, 2013, Judge Mariani of the United States District Court for the Middle District of Pennsylvania transferred Chapman's petition to this District, and the case was assigned to Judge Jones. (ECF 1-5) Respondents filed their answer (ECF 8), and Chapman moved to amend his petition (ECF 12). He subsequently filed a memorandum in support of his petition (ECF 15) and notified the Court that his state remedies were exhausted (ECF 16).

      Magistrate Judge Perkin issued a Report and Recommendation recommending the Court deny the petition. (ECF 18). Chapman filed objections to the R&R (ECF 23, 24), which Respondents opposed (ECF 26), prompting Chapman's reply (ECF 27). While a decision on the R&R was pending, the case was reassigned from Judge Jones to this Court. (ECF 28). Having thoroughly reviewed the record and all filings, the Court adopts the R&R and denies Chapman's petition.

1

I

The R&R recounts the case's factual background and procedural history. In short, Chapman was tried alongside codefendant Kalyn Walker, and a jury convicted him of multiple crimes related to the robbery of a Wawa in Bucks County, Pennsylvania. The court sentenced Chapman to an aggregate term of twenty-two and a half to forty-five years' imprisonment. *See Commonwealth v. Chapman,* No. 58 EDA 2009 at 1 (Pa. Super. Ct. Dec. 15, 2010). Chapman appealed his conviction, which the Superior Court affirmed. *Id.* The Pennsylvania Supreme Court subsequently denied his petition for allowance of appeal. *Commonwealth v. Chapman*, 24 A.3d 361 (Pa. 2011) (Table). Chapman filed an unsuccessful state petition for post-conviction relief, after which he filed an unsuccessful appeal of the petition's denial. *Commonwealth v. Chapman*, 1513 EDA 2012 at 1 (Pa. Super. Ct. Jan. 11, 2013). Chapman filed a second unsuccessful PCRA petition, and while the petition was pending, he filed his petition seeking federal habeas relief.

Chapman asserts the following eleven claims:[1] (1) his Fourteenth Amendment rights were violated when the trial court denied his motion for severance; (2) the trial court violated Chapman's rights under the Sixth Amendment's Confrontation Clause by admitting into evidence the redacted statement of Chapman's non-testifying codefendant Walker; (3) trial counsel was ineffective for failing to object to the

---

[1] In his petition, Chapman inserted two pages between pages four and five of the standard habeas corpus petition form outlining the eleven claims he raised at various times throughout his state-court proceedings. *See* (Pet. 4a, ECF 1-1). Judge Perkin determined that Chapman's filings—which consist of his petition for a writ of habeas corpus (ECF 1), motion to stay the proceedings (ECF 10), motion to amend (ECF 12) and memorandum of law (ECF 15)—collectively evidence that Chapman attempted to present eleven claims in his petition. *See* (R&R 9, ECF 18). Because "[i]t is the policy of the courts to give a liberal construction to pro se habeas petitions," the Court agrees with Judge Perkin and considers Chapman's eleven claims. *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 555 (3d Cir. 1969) (citation omitted).

2

admission of Walker's redacted statement; (4) trial counsel was ineffective for failing to move to exclude evidence that Chapman used an alias when he was arrested; (5) trial counsel was ineffective for failing to object to the prosecutor's use of Walker's redacted statement during closing argument; (6) trial counsel was ineffective for failing to renew his severance motion after the admission of Walker's statement; (7) trial counsel was ineffective for failing to object when the jury was purportedly instructed improperly that each element of the offenses of possession of an instrument of crime and conspiracy had to be proven beyond a reasonable doubt; (8) trial counsel was ineffective for failing to impeach the credibility of a police witness; (9) trial counsel was ineffective for failing to object to jury instructions on consciousness of guilt; (10) appellate counsel was ineffective for failing to raise claims three through nine on direct appeal; and (11) PCRA counsel was ineffective for failing to raise claims six through ten when seeking collateral relief. (Pet. 4a, ECF 1-1).

Because Chapman objects to the entire R&R, the Court reviews Judge Perkin's conclusions *de novo* and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

II

A

Under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings [unless the State court's decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state

3

court proceeding." 28 U.S.C. § 2254(d); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). A state court ruling is "contrary to" clearly established federal law if the court applies a rule that contradicts Supreme Court precedent or if the court confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009). A decision is based on an unreasonable determination of the facts only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (internal quotations and citation omitted).

B

Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust the remedies available in state court. *Lambert v. United States*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion ensures state courts have the first opportunity to review federal constitutional challenges to state convictions. *See Davila v. Davis*, 582 U.S. 521, 527 (2017). For the same reason, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Id*. To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court; if he does

not, the claims become procedurally defaulted and he may not raise them in federal court. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). A petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, a habeas petitioner gives the state courts this opportunity by fairly presenting his claims to the Superior Court on either direct review or on appeal of a petition under Pennsylvania's Post Conviction Relief Act. *See Lambert v. Blackwell*, 387 F.3d 210, 232–34 (3d Cir. 2004).

A petitioner may be exempt from the exhaustion requirement under three circumstances: (1) he demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law; (2) he demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice; or (3) he invokes the narrow *Martinez* exception. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000). To show prejudice, the petitioner must prove "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*

The fundamental miscarriage of justice exception "will apply only in extraordinary cases, *i.e.,* where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Asserting actual innocence requires the petitioner to "show it is more likely than not that no reasonable juror would have

5

convicted him in light of the new evidence presented in his habeas petition." *Hubbard v. Pinchak*, 378 F.3d 333, 339 (3d Cir. 2004).

Finally, under the *Martinez* exception, ineffective assistance of trial counsel claims are not procedurally defaulted if: (1) the default was caused by ineffective assistance of post-conviction counsel, (2) the default occurred in the first collateral proceeding in which the claim could be heard, and (3) the underlying claim of trial counsel's ineffectiveness has some merit, analogous to the substantiality requirement for a certificate of appealability. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

C

*Strickland v. Washington's* two-part test governs ineffective assistance of counsel claims. 466 U.S. 668, 669 (1984). To succeed, Chapman must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness", and (2) he "suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687). His claim cannot proceed if he fails to demonstrate either prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one . . . .").

With respect to counsel's performance, there is a "strong presumption" it was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Strategic choices "are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Where "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy . . . could

6

have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005).

To establish prejudice, Chapman must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. Counsel cannot be found to be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015) ("'[T]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'") (quoting *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

Additionally, where a state court already rejected an ineffective assistance of counsel claim, a federal court must defer to the state court's decision in accordance with 28 U.S.C. § 2254(d). As the Supreme Court stated:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

III

A

The Court begins with Chapman's second claim. Chapman argues the trial court violated his Sixth and Fourteenth Amendment rights when it admitted non-testifying codefendant Kalyn Walker's redacted confession. (Pet. 7, ECF 1-1.) While Chapman maintained his innocence throughout trial, Walker admitted to participating in the robbery, and the Commonwealth introduced Walker's signed confession into evidence at their joint trial. (N.T. 12/2/08 at 221:13–222:20). Chapman claims the admission of Walker's redacted statement was an unreasonable application of the Supreme Court's holdings in *Bruton v. United States*, 391 U.S. 123, 124 (1968) and *Gray v. Maryland*, 523 U.S. 185, 192 (1998) and therefore violated the Confrontation Clause. (Mem. L. Supp. Pet. 4–9, ECF 17; Obj.'s to R&R 4–8, ECF 23.)

i

Walker's signed statement read as follows:

> I have already been apprised of my rights and the following statement is true.
> My name is Kalyn Walker and I'm here with my mother Tracy Trammel.
> I know the person I was arrested with.
> I was not driving the silver SUV with New Jersey plates. I was the front passenger.
> I got out of the SUV at the housing complex across the road from the Wawa (Liberty Drive).
> I walked behind the Wawa through the construction site.
> I was the last one in the Wawa.
> I went to the cash register and the female clerk was already putting money in a Wawa bag. That bag is in the car.
> I said to the lady "it'll be okay, just follow instructions."
> I took the bag from her.
> I then went to the back of the store with everyone else; there was a male customer in there.
> I did not cut the phone wires.

> I did not have a gun. I stuck my hand in the pocket of my hoodie and pointed it.
> We barely got six hundred dollars.
> The photograph of the money Detective Hanks showed me was the money from the Wawa and the time is 9:38 a.m.

(N.T. 12/2/08 at 221:13–222:20). Prior to redactions, the statement referenced Chapman's purported nickname, JJ, stating: "I know the person I was arrested with as JJ," and "I have known JJ for about a month." (N.T. 12/1/08 at 17:17–25.) The court instructed the jury that "you can only utilize [Walker's] statement and consider that statement as against Kalyn Walker only. And again, I wish to underscore that. Any statement which may have been made by Kalyn Walker, if you find that he did, is only evidence against him and him alone." *Com. v. Chapman*, No. 4286/2008, 2009 WL 6956183 at 11 (Pa. Ct. Com. Pl. Sep. 3, 2009). Chapman contends that even with this instruction, the reference to "the person" in the phrase "the person I was arrested with" and the word "we" in the phrase "we barely got six hundred dollars" required further redaction because the statement "allowed the jury to immediately infer" that the statement referred to Chapman. (Obj.'s to R&R 5, ECF 23.)

ii

The Sixth Amendment's Confrontation Clause guarantees a defendant the right to confront witnesses against him. U.S. Const. amend. VI. In *Bruton v. United States*, the United States Supreme Court held that—even with a limiting instruction—the introduction of a non-testifying codefendant's confession that directly implicates another defendant in the crime violates that defendant's right to cross-examine witnesses. *See* 391 U.S. at 126.

In *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the Court held that when a codefendant's confession is redacted to eliminate the defendant's name and any

9

reference to the defendant's existence, such a total redaction—coupled with a limiting instruction—eliminates any potential Sixth Amendment violation. 481 U.S. at 207–08, 211. But in *Gray v. Maryland*, the Court held that simple redactions, such as leaving a blank space in place of the defendant's name or replacing the name with the words "deleted" would not protect the defendant's Sixth Amendment rights, despite the jury receiving a limiting instruction. 523 U.S. at 192. The Court believed these "obvious indications of alteration" violated the Confrontation Clause because the redacted statements were "similar enough to *Bruton*'s unredacted confessions as to warrant the same legal results." *Id.* at 195. When a confession with such obvious redactions is read at trial, "the jury will often realize that the confession refers specifically to the defendant." *Id.* at 193.

      The Supreme Court further refined its Confrontation Clause analysis last month in *Samia v. United States*, No. 22-196, 599 U.S. __ (2023), agreeing with the trial court's redaction of a non-testifying codefendant's confession. *Samia,* 599 U.S. __, slip op. at 1. A Filipino crime lord, Paul LeRoux, tasked Adam Samia, Joseph Hunter and Carl Stillwell with killing Catherine Lee, a real estate broker who LeRoux thought had stolen money from him. *Id.* at 2. LeRoux later became a cooperating witness and Samia, Hunter and Stillwell were tried jointly on charges including murder for hire. During his post-arrest interview, Stillwell admitted he was present when Lee was killed, but said Samia was the one who shot her. *Id.* At trial, the government introduced portions of Stillwell's confession through the testimony of a DEA agent, who stated that Stillwell "described a time when the *other person* he was with pulled the trigger on that woman in the van." *Id.* at 3–4 (emphasis in original). Samia argued that despite a limiting instruction that the jury could only use the statement against

10

Stillwell, the introduction of the confession, even as redacted, violated the Sixth Amendment "because other evidence and statements at trial enabled the jury to immediately infer that the 'other person' described in the confession was Samia himself." *Id.* at 4.  The Court found that the sanitized version of Stillwell's confession did not violate the Confrontation Clause, reasoning that the confession was "redacted to avoid naming Samia, satisfying *Bruton's* rule" and "was not obviously redacted in a manner resembling the confession in *Gray*; the neutral references to some "other person" were not akin to an obvious blank or the word 'deleted.'" *Id.* at 15.  The Court stated that while the Confrontation Clause guarantees a defendant the right to confront witness against him, "it does not provide a freestanding guarantee against the risk of potential prejudice that may arise inferentially in a joint trial." *Id.* at 17.

### iii

*Samia* confirms that the trial court's decision to admit Walker's statement was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  *See* 28 U.S.C. § 2254(d).  In Chapman's case, the court redacted Walker's confession in a way similar to the redaction of Stillwell's confession.  The use of the pronoun "we" and the term "person" did not directly implicate Chapman, and thus did not violate *Bruton*.  Furthermore, the redactions were not the obvious deletions of the type *Gray* prohibited, so the statement's admission into evidence did not violate Chapman's rights under the Confrontation Clause.  *See Samia*, 599 U.S. __, slip op. at 15.

### B

In his first claim, Chapman argues the trial court violated his due process rights when it denied his severance motion.  (Pet. 6, ECF 1-1.)  Chapman also bases this claim

on a misapplication of *Bruton*. *See* (Br. Supp. Pet. at 13, ECF 17; Obj.'s to R&R 1–3, ECF 23).

The Supreme Court has noted that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and 'serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States,* 506 U.S. 534, 537 (1993). Defendants "are not entitled to severance merely because they may have a better chance of acquittal in separate trials"; a court should only grant severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539–40. Courts have recognized that this risk may occur when codefendants assert "mutually antagonistic" defenses. *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (citing *Zafiro,* 506 U.S. at 538). Even if a defendant establishes that his defense and that of his codefendant are mutually antagonistic, severance is not mandatory, and a defendant "must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial." *Id.* (quoting *United States v. Reicherter,* 647 F.2d 397, 400 (3d Cir. 1981)). In Pennsylvania, defendants must show a real potential for prejudice—not just mere speculation—to be tried separately. *Commonwealth v. Jones,* 668 A.2d 491, 501 (Pa. 1995).

Codefendants' "defenses only become antagonistic when the jury, in order to believe the testimony offered on behalf of the one defendant, must disbelieve the testimony offered by his or her co-defendant." *Id.* Here, the defenses were not antagonistic because the jury could have believed both Chapman's defense that he did

12

not participate in the crime and Walker's defense that he did in fact rob the Wawa but without a gun.

Unable to show that his and Walker's defenses were antagonistic, Chapman again focuses on Walker's redacted confession and claims he was prejudiced by its admission at the joint trial. But Chapman has shown no clear and substantial prejudice that would have made his trial "manifestly unfair."

The Commonwealth presented abundant evidence to convict Chapman in the robbery, with or without Walker's statement. At trial, Wawa employee Tammy Boyd testified that two men wearing face masks entered the store at around 3:30 a.m. with one of the men wearing a gray hooded sweatshirt and the other a black hooded sweatshirt. (N.T. 12/2/08 at 50:22–23, 56:5–57:8, 61:6.) Although the man in the black sweatshirt had his hood pulled up over his head, Boyd could see he was a black man, and described him as wearing a black face mask. (*Id*. at 61:6–25, 62:4–8.) This man also had a gun. (*Id*. at 62:20.) As they fled the scene, the robbers left cartons of Newport cigarettes strewn across the floor of the store. (*Id*. at 73:10–17.)

Bristol Township police officers testified that shortly after the robbery, they found Chapman and Walker, apparently sleeping, in a parked car near the Wawa. (*Id*. at 117:22–25.) Walker was wearing a gray hooded sweatshirt with a black knit cap rolled up on his head while Chapman wore a white polo shirt. (*Id*. at 101:3–21.) Police later discovered that the knit hat Walker wore was actually a rolled up black ski mask. (*Id*. 130:19–22.) At trial, jurors saw footage of the man wearing the black sweatshirt entering the Wawa with a gun while wearing a blue latex glove. (N.T. 12/3/18 at 42:13–23.) From the car, officers recovered Wawa shopping bags, a Wawa receipt, several rolls of wrapped coins, cartons of Newport cigarettes, woolen hats, a blue latex glove, a

13

black hooded sweatshirt containing a black ski mask and a loaded Colt .45 revolver, and $311 in cash. (*Id.* 102:1–10, 119:4–11, 197:7–207:7.) Police also recovered an additional $375 from Walker's front pocket. (*Id.* 132:22–25, 134:5.) Heather Birl, a Wawa regional security officer, testified that $677 was stolen during the robbery. (*Id.* at 81:25).

When removed from the car, Chapman falsely identified himself as Jeffrey Jones. (*Id.* 107:9.) Officers noticed that Walker and Chapman both had wet mud on their pants and shoes. (*Id.* 127:20–22). Police seized both defendants' shoes, and the soles of each pair were compared with muddy footprints left at the scene of the robbery. (*Id.* 136:19–137:15.) An expert testified that the footprints were likely left by the defendants' sneakers. (*Id.* at 181:12–182:18.) Given this evidence, Walker's statement could not have prejudiced Chapman, and there was no justification for granting his motion for severance.

C

In his third claim, Chapman argues trial counsel was ineffective for failing to object to the admission of Walker's redacted statement and for failing to seek further redactions. (Br. Supp. Pet. 15, ECF 17; Obj. to R&R 9, ECF 23.) The PCRA court correctly held no *Strickland* violation occurred. Under *Strickland*, Chapman must successfully show he was prejudiced by any alleged deficiency in counsel's performance. *Strickland*, 466 U.S. at 687. As previously discussed, counsel's performance was not deficient, and even if it was, Walker's redacted statement did not prejudice Chapman.

D

Chapman contends in claim four that trial counsel was ineffective for failing to move to exclude evidence that he used the false name Jeffrey Jones when he was

arrested. (Br. Supp. Pet. 27, ECF 17; Obj. to R&R 15–16, ECF 23; N.T. 12/2/08 at 107:9.) Chapman argues this evidence prejudiced him at trial and was not probative of guilt because he didn't know he was being arrested for the robbery at the time he gave officers the fake name. (Br. Supp. Pet. 27, ECF 17; Obj. to R&R 15–16, ECF 23.) He claims he did so because there was a warrant out on him for absconding from a halfway house, and he believed that's why he was being arrested. (PCRA Hr'g Tr. 43:10–12.)

In reviewing his claim, the PCRA court determined the trial court properly admitted into evidence his use of the false name, particularly given the trial court's instruction to the jury that evidence of the false name tends to prove consciousness of guilt, something the jury should consider with all other evidence. *See* (N.T. 12/3/08 at 75:12–17; *Commonwealth v. Chapman,* No. 4286/2008 at 13–20 (Pa. Ct. Com. Pl. July 11, 2012). Under Pennsylvania law, evidence that a defendant gave police a different name is relevant to the defendant's consciousness of guilt and may be admitted for that purpose. *See Commonwealth v. Toro*, 638 A.2d 991, 998 (Pa. Super. Ct. 1994).

The decision of whether to admit evidence is a matter of state law and the Court must accept the state court's decision. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding that the habeas court may not re-examine state court determinations of state law questions). Because the PCRA court has already determined that the admission of Chapman's use of a fake name was properly admitted under state law, Chapman cannot satisfy the first prong of *Strickland*, that counsel's performance was deficient. *See Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) (holding that because the federal court was bound by the Pennsylvania Superior Court's determination that the trial court's decision was correct under state law, petitioner was unable to demonstrate counsel's performance was deficient).

15

Additionally, Chapman cannot satisfy *Strickland*'s second prong because there is no "reasonable probability" that had Chapman's use of an alias been hidden from the jury that "the result of the proceeding would have been different" given the abundant evidence the jury had to convict Chapman.  *Strickland,* 466 U.S. at 694.

E

In claim five, Chapman argues that counsel was ineffective for failing to object to the prosecutor's reference to Walker's redacted statement during her closing argument. (Pet. 4, ECF 1-1.)  Chapman claims the Commonwealth "repeatedly" referred to Walker's statement to prove Chapman planned the robbery and that the money recovered from the car was the money taken from the Wawa.  (*Id.*)

The prosecutor did not use Walker's confession against Chapman during her closing argument.  Chapman focuses on the prosecutor's assertion that "we also know by Kalyn Walker's statement to the police that *he* was there when Officer Gribbon, or Corporal Gribbon, came to the Wawa and, that was several minutes before the robbery took place."  (N.T. 12/3/18 at 35:10–14) (emphasis added).  "He" refers clearly to Walker, not Chapman.

The prosecutor went on to say that "we know from that evidence that they were there ahead of time."  (*Id.* at 35:1–18.)  But "that evidence" refers to the totality of the evidence summarized by the prosecutor, mainly the footprints identified behind the store, not Walker's statement.  The prosecutor cited Walker's statement when referring to Walker's presence at the Wawa and never used it to link Chapman to the scene of the crime.

Chapman also argues that in her closing the prosecutor impermissibly used Walker's statement when discussing the amount of money found in the car.  (Br. Supp.

16

Pet. 11 n.7., ECF 17.) He believes that the prosecutor's discussion of Chapman's "share of the loot" found in the car was somehow impermissible because in his statement, Walker also discussed the money, claiming he and his coconspirator obtained less than six hundred dollars. (*Id*.) The prosecutor did not mention Walker's statement in this part of her closing. *See* (N.T. 12/3/18 at 40:10–41:1). And the jury knew all of this from other evidence. Heather Birl testified to the amount of money stolen from the Wawa (N.T. 12/2/18 at 81:25), while police officers testified as to the amount of money found on Walker and in the car when Chapman was arrested (*Id*. at 134:5, 203:13–15).

IV

Chapman's remaining claims (six through eleven) are procedurally defaulted because he did not present them to the Superior Court on either direct appeal or on appeal of the denial of his PCRA petition. *See Lambert*, 387 F.3d at 232–34; (Pet. for Post-Conviction Relief, CP4286/2008, March 11, 2016) (listing claims PCRA counsel failed to raise on appeal). And Chapman has not shown cause for the default or actual prejudice, nor has he demonstrated that a fundamental miscarriage of justice will result in failing to consider his claims.[2] *See Coleman*, 501 U.S. at 750.

Chapman argues the default should be excused under *Martinez* because PCRA counsel failed to raise these claims on appeal. But the *Martinez* exception "applies only to attorney error causing procedural default during initial-review collateral proceedings, *not collateral appeals*." *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015)

---

[2] Chapman has not shown that failure to excuse the default will result in a miscarriage of justice. *See Schlup v. Delo,* 513 U.S. 298, 324 (1995). Although Judge Perkin wrote that "nothing in the record suggests that Chapman could not meet the *Schlup* test," the use of a double negative in that sentence is surely a typo, as it is inconsistent with Judge Perkin's reasoning and conclusion. (R&R 13 n.7, ECF 18.)

(emphasis added). Because claims six through ten were all raised in Chapman's initial PCRA petition, but not on his PCRA appeal, *Martinez* does not apply.[3] *See id.*; (PCRA Claims and Br. 2–23, No. 4286/2008, March 1, 2012, Ex. D-1; PCRA Hr'g Tr. 131:12–134:20, No. 4286/2008, March 1, 2012).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] Nor does *Martinez* apply to Chapman's eleventh claim—that PCRA counsel was ineffective for failing to raise claims six through ten when seeking collateral relief. PCRA counsel did raise those claims when seeking initial collateral review. (PCRA Claims and Br. 2–23, No. 4286/2008, March 1, 2012, Ex. D-1.)